**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| Paul Hoffman and Lynn Hoffman, | |
|      Plaintiffs, | |
| v. | Civil Acton No.: |
| Textron, Inc., | |
|      Defendant. | |

**PLAINTIFFS' COMPLAINT**

**Introduction**

1.      This is an action brought by a retired Textron, Inc. (hereafter "Textron") executive, Paul Hoffman, who is a participant in Textron's Deferred Income Plan for Textron Key Executives (hereinafter "Plan"), and by his wife and beneficiary under the Plan, Lynn Hoffman.

2.      After Mr. Hoffman retired, in accordance with the terms of the Plan as in effect in 1995 ("1995 Plan"), Mr. Hoffman elected to receive payment of his benefits under the Plan by means of 32 years of installment payments, beginning in 2000 with the final payment in 2031, under terms providing that if he dies prior to the final payment, the installment payments would thereafter continue and be paid to his named beneficiary, his wife Lynn.  Mr. Hoffman made this election as part of financial and retirement planning, including accounting for his wife's longer life expectancy relative to his own.  In accordance with the terms of the 1995 Plan, Textron agreed in 1999 to pay the benefits in that manner.  In 2015, Textron advised Mr. Hoffman that it had amended the 1995 Plan to require the payment of benefits to a participant be made to the

participant's designated beneficiary in a lump sum payment upon the participant's death; consequently, the distribution schedule it approved in 1999 was unilaterally changed to provide that, upon Mr. Hoffman's death, any remaining benefits would be paid in a lump sum payment to his beneficiary.

3.     As discussed below, Textron's decision is contrary to the terms of the 1995 Plan, barred by the doctrine of unilateral contract applicable to the 1995 Plan, and severely prejudices both plaintiffs.  As a result, Textron cannot, as a matter of contract law and interpretation of the 1995 Plan and the amended 1995 Plan, alter the terms of payment previously authorized by it in 1999.  Furthermore, Textron is estopped from doing so even if the terms of an amended 1995 Plan would have otherwise allowed Textron to do so.

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because this action is brought under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA").

5.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Defendant has substantial business operations in this District and may therefore be found in this District.

6.     Textron had and has a facility in Wilmington, MA (Textron Systems).  Textron Systems is headquartered in Wilmington, MA. Revenues of Textron Systems were in excess of $1.7 billion in 2016.  Mr. Hoffman began his employment with Textron Systems in that facility in 1962, initially for AVCO which was acquired by Textron in 1985.  Mr. Hoffman continued to work for Textron in Massachusetts until he retired from Textron Systems in l996.  He was a resident of Massachusetts from 1962 until 1998.  Mr. Hoffman's wife Lynn was a resident of

Massachusetts from 1970 until 1998.  Current and former Textron executives in Massachusetts are subject to the 1995 Plan or the amended 1995 Plan and other employees in Massachusetts are governed by Textron's ERISA benefit plans.

7.     Personal jurisdiction over the Defendant lies under 29 U.S.C. § 1132(e)(2), which provides that "process may be served in any other district where a defendant resides or may be found."  Textron may be found here given its actions in this state.

## PLAINTIFFS

8.     Plaintiff Paul Hoffman currently resides in New Mexico.

9.     Mr. Hoffman is a former executive with Textron, who retired from the company in 1996 after 34 years of service.  He is a participant in the Plan, and has been receiving annual benefit payments under that plan since 2000.

10.     Plaintiff Lynn Hoffman currently resides in New Mexico.  She is Mr. Hoffman's designated beneficiary under the Plan.

## DEFENDANT

11.     Textron is the sponsor and administrator of the Plan.  Under the terms of the Plan, Textron is "solely responsible for its general administration."

## FACTS

12.     Mr. Hoffman retired from Textron in May, 1996, after serving 34 years with Textron and AVCO, which was acquired by Textron in 1985.

13.     Mr. Hoffman is currently 83 years old and Mrs. Hoffman, his wife and designated beneficiary under the Plan, is currently 68.

14.     Mr. Hoffman worked with Gary Piscione, Textron's Director of Executive Benefits, in 1999 to determine a payment schedule for the distribution of Mr. Hoffman's benefits

under the 1995 Plan.  Due to a fourteen year difference in age, Mr. Hoffman requested a payout schedule based on his wife's life expectancy which Mr. Piscione determined to be 32 years. There was no discussion of or provision for a lump sum payment to the designated beneficiary of Mr. Hoffman in the event of his death prior to the final payment of the 32 annual installment payment schedule.  No such lump sum payment was contemplated and no such lump sum payment was required under the 1995 Plan.  Textron approved a payment schedule for 32 years, providing for installment payments to commence in 2000 and end in 2031.  This was requested by Mr. Hoffman in 1999, and Textron approved and agreed at that time to this distribution schedule in accordance with the terms of the 1995 Plan.  Through January, 2017, all distributions by Textron of Mr. Hoffman's benefits under the Plan were made in accordance with that 32 year payment schedule.

15.     The Plan is a type of plan commonly referred to as a "top-hat" plan.  Under the terms of the 1995 Plan in effect at the time Mr. Hoffman retired from Textron in May 1996, Section 5.01 and Section 5.02 dictated the manner in which benefits due under that plan were to be distributed.  Section 5.01 provided that Textron's Benefits Committee shall choose a method of payment of benefits that is authorized under Section 5.02 of the 1995 Plan, "after considering any method of payment requested by the Participant…."

16.     Section 5.02 of the 1995 Plan provided that benefits payable under that plan shall be distributed in accordance with one of the following methods:

(1)     payment in a single sum; or

(2)     payment in a number of annual installments, each payable as soon as practicable after the end of each successive calendar year, over a period not exceeding the life expectancy of the payee or his primary Beneficiary (whichever is greater) determined as of the date on which the benefits first become payable.  The annual installments

shall be calculated in a manner which provides substantially equal annual installments, or shall be calculated each year by dividing the unpaid amount of the benefits as of January 1 of that year by the remaining number of unpaid installments; or

(3)     payment through a combination of the foregoing methods.

17.     Mr. Hoffman requested that the payment of his benefits be made over a schedule of 32 annual payments based on his wife's life expectancy in accordance with the methods of payment provided for in the 1995 Plan.

18.     The 1995 Plan did not require a lump sum payment upon Mr. Hoffman's death. All installments were to be paid out over 32 years, the life expectancy of his wife, his designated beneficiary, without any acceleration of payments upon Mr. Hoffman's death.  In other words, Mr. Hoffman's benefits would be paid out over a fixed period of 32 annual installments regardless of whether he died during that installment period, so that, if he died during the installment period, all remaining installment payments after his death would be paid over the balance of the fixed annual installment schedule to Mr. Hoffman's designated beneficiary.  Mr. Hoffman's designated beneficiary was and remains his wife, Mrs. Hoffman.

19.     This annual installment payment schedule was approved and implemented by the Benefits Committee on behalf of Textron as of the year 2000, when the payment of the benefits payable to Mr. Hoffman were required to begin.  Pursuant to Section 5.03 of the 1995 Plan, benefit payments for a participant were required to begin as of the year after the participant attains or would have attained age sixty-five.; in this case, Mr. Hoffman retired in 1996 at the age of 62 and benefit payments were required to begin in the year 2000.

20.     Textron did not reserve the right to revise that decision and had no authority to make a subsequent decision changing that annual installment payment schedule to instead

require a lump sum payment of any remaining benefits to Mr. Hoffman's designated beneficiary upon his death.

21.     Section 9.03 of the Plan permits Textron to amend the Plan document, but the Plan does not contain any language allowing Textron to retroactively change a contractually agreed upon benefit, including a previously agreed upon payment schedule that was adopted and implemented pursuant to Sections 5.01 and 5.02 of the Plan.

22.     The 1995 Plan was subsequently amended, effective January 1, 2008, to provide that "any payment to a Beneficiary shall be made in a lump sum."

23.     Mr. Hoffman was not informed of this amendment at that time.

24.     Mr. Hoffman was not informed at that time that his previously agreed upon payment schedule was or would be unilaterally changed by Textron based on that amendment of the Plan.

25.     Mr. Hoffman first learned that Textron would not abide by its previous agreement and determination that, under the terms of the Plan, it would make 32 annual distributions, with payments continuing to his designated beneficiary following Mr. Hoffman's death, when he received correspondence from Stephen Fontaine of Textron, dated July 17, 2015, regarding the distribution of Mr. Hoffman's benefits.  Mr. Fontaine's statement about a lump-sum payment to Mr. Hoffman's beneficiary at his death was an incidental statement made after review of payment calculations.

26.     At that time and in that correspondence, Mr. Fontaine confirmed to Mr. Hoffman the gross amounts he would be paid as of each installment payment.  Mr. Fontaine further stated that Mr. Hoffman should "note that, if you were to pass away, any remaining [amounts owed

under the Plan] will be paid to your beneficiary on file in a lump sum approximately 90 days after your death."

27.     Mr. Hoffman thereafter, in accordance with the terms of the Plan, submitted a written claim to Textron: (a) seeking reversal of the decision to pay any remaining distribution upon his death to his beneficiary in a lump sum, rather than by payment of the remaining installments; and (b) requesting that Textron abide by its prior determination and agreement that it would pay the distribution over 32 annual installments, including the payment of those annual installments to his beneficiary after his death.

28.     Textron denied Mr. Hoffman's claim.

29.     Pursuant to the terms of the Plan, Mr. Hoffman thereafter appealed that determination to Textron in writing, explaining in detail why the Plan should grant him his requested relief.  Textron denied this request and appeal as well.  Textron advised Mr. Hoffman at that time that its decision was final and that Mr. Hoffman had the "right to continue his action in court under ERISA."

30.     Textron's determination was incorrect, both as a matter of law and under the terms of the Plan.

31.     At the time that Mr. Hoffman retired and at the time that Textron agreed to pay the full distribution solely by means of 32 annual installment payments to Mr. Hoffman and, if he died during that installment period, to continue making payments each year pursuant to that schedule to his beneficiary, Section 5.01 of the 1995 Plan expressly provided that the Benefits Committee "shall chose . . . the methods in Section 5.02 by which benefits . . . shall be distributed" after considering any method of payment requested by the participant as to the method of payments.  The Benefits Committee did "choose" that 32 annual installment schedule.

32.     Section 5.02 of the 1995 Plan expressly provided that Textron "shall distribute the benefits in accordance with" one of three identified methods, including installment payments "over a period not exceeding the life expectancy of the payee or his primary beneficiary (whichever is greater)."  Textron agreed to make all payments in that manner.  Under the terms of Sections 5.02 and 5.03 of the 1995 Plan, Textron was thereafter required to make those payments and to do so solely in the agreed upon manner.

33.     Sections 5.01 and 5.02 expressly declare that Textron "shall" make all such payments in the selected manner, and includes no language allowing any subsequent change to the method of payment once determined by Textron.

34.     While Section 9.03 of the Plan permits Textron to amend the Plan document, neither that section nor any other provision in the Plan permits Textron to amend or revise its previous determination as to payment of benefits to Mr. Hoffman and his designated beneficiary. Neither that section nor any other section of the Plan allows the Plan to be amended to the detriment of a Plan participant; amending the 1995 Plan adversely affected Mr. Hoffman's rights regarding the distribution of benefits after he had become entitled to payment under the Plan. Furthermore, neither that section nor any other section of the Plan allows Textron to change the method of payment after it has been determined in accordance with the provisions of Sections 5.01 and 5.02 of the Plan.

35.     Section 9.03 states only that "[t]he Board or its designee shall have the right to amend, modify, suspend or terminate" the Plan.  This provision does not state that the Board or any designee can "amend [or] modify" any previous determination by Textron as to the method of payment to a particular participant already determined in accordance with Sections 5.01 and 5.02 of the Plan.

36.     Accordingly, under the express terms of the Plan, Textron was required to abide by its determination and could not later change that determination by reliance on Section 9.03 or any amendment of the Plan executed on the basis of the authority granted by Section 9.03.

37.     The Plan amendment relied upon by Textron for its decision to change the form of distribution and require a lump sum payment to Mr. Hoffman's designated beneficiary upon his death states, contrary to the 1995 Plan, that "any payment to a Beneficiary shall be made in a lump sum."

38.     This Plan amendment does not state that prior determinations as to the form and timing of distribution, made pursuant to the terms of Sections 5.01 and 5.02 of the 1995 Plan, could be made void and superseded.

39.     Accordingly, under the express terms of the 1995 Plan and the 1995 Plan as amended, the amendment did not authorize Textron to reject or supersede its prior determination of the form of distribution to Mr. Hoffman or to his designated beneficiary.  Textron therefore could not rely on the amendment to change its prior determination, and is instead required, even after the amendment, to make full distribution by means of the contractually agreed upon 32 annual installment payments to or on behalf of Mr. Hoffman.  Textron cannot amend the 1995 Plan to the detriment of a participant or the participant's beneficiary.

40.     Accordingly, the terms of the 1995 Plan and the 1995 Plan as amended do not allow Textron to retroactively change a contractual agreement regarding the payment of Mr. Hoffman's benefits and to instead require that any payment of his benefits be made in a lump sum payment to his designated beneficiary.  The terms of the 1995 Plan require Textron to distribute all amounts owed by means of a fixed schedule of 32 annual installment payments to or on behalf of Mr. Hoffman.  Textron is contractually required by Sections 5.01, 5.02 and 9.03,

even after amending the 1995 Plan, to make 32 annual installment payments to the plaintiffs regardless of the death of Mr. Hoffman.  The contractual provisions in the 1995 Plan do not allow for a lump sum payment to be made upon Mr. Hoffman's death.

41.     Textron is also barred from amending the 1995 Plan to the detriment of a participant pursuant to the doctrine of unilateral contract.  This common law doctrine of contract interpretation and enforcement has been universally applied to the enforcement of the terms and conditions of top-hat plans under ERISA by federal courts enforcing the terms of a top-hat plan, such as the Plan.

42.     Under this doctrine, the Plan's terms governing the distribution of benefits to Mr. Hoffman that were in effect when Mr. Hoffman accepted them, including by means of his employment (and continued employment) with Textron and his participation in the 1995 Plan, may not be amended without his consent.  Under this doctrine, those Plan terms became binding contractual commitments once Mr. Hoffman accepted them. Under this doctrine, the 1995 Plan terms in effect when Textron agreed to pay Mr. Hoffman's benefits in a fixed schedule of 32 annual installment payments, with the balance of such annual installment payments due after his death being made on the same fixed schedule to his designated beneficiary, cannot be amended without Mr. Hoffman's consent.

43.     The 1995 Plan terms that applied to Mr. Hoffman at the time of his retirement and when Textron agreed to the annual installment payment schedule did not require a lump sum payment to a participant's designated beneficiary upon the death of the participant.  The terms of the 1995 Plan instead expressly authorized distribution by installment payments "over a period not exceeding the life expectancy of the payee or his primary beneficiary (whichever is greater),"

and Textron expressly determined that Mr. Hoffman's benefits would be distributed in that manner in accordance with the then operative terms of Sections 5.01 and 5.02 of the 1995 Plan.

44.     The 1995 Plan terms which provided for a payment schedule determined after consideration of a participant's request for distribution of benefits, and the subsequent payment schedule agreed to by Textron, became a binding contractual commitment in 1999 and, pursuant to the doctrine of unilateral contract, could not thereafter be altered by amendment without Mr. Hoffman's consent, which he did not and has never provided.

45.     Textron therefore cannot alter the distribution schedule to which it previously agreed.

46.     Textron interprets the Plan as allowing it to change the terms of Mr. Hoffman's benefits and his payment schedule, but Textron cannot do so under the terms of the Plan or applicable law.  Further, under Textron's reading of the Plan, the Plan's terms would have to be treated as being ambiguous.  The terms nowhere provide Textron with that authority, and any terms on which Textron relies to make those changes are susceptible to competing interpretations that are more reasonable than that selected by Textron.

47.     Mr. Hoffman requested the fixed payment schedule of 32 annual installment payments, with no lump sum payment upon his death and instead continued payment of the installments to his designated beneficiary, as part of his financial planning and his retirement planning, for the specific purpose of accounting for the likelihood that he would pre-decease his beneficiary and that this might occur prior to the conclusion of the fixed schedule of 32 annual installment payments.

48.     Textron's decision to change the form of distribution to require a lump sum payment to Mr. Hoffman's beneficiary upon his death is significantly detrimental to Mr.

Hoffman and his designated beneficiary, causing a significant financial loss and increased tax burden.  All are prejudiced by Textron's changing the form of distribution in the event of Mr. Hoffman's death to require a lump sum payment upon Mr. Hoffman's death in clear violation of a contractual agreement.

49.     The prejudice to the plaintiffs from Textron's actions is apparent and can be illustrated in a number of ways.  For purposes of clarity, as of January, 2017, the remaining scheduled payments needed to conclude the 32 years of installment payments totaled $2,695,477 whereas a lump sum payment at that time, which would be required under Textron's amended 1995 Plan upon Mr. Hoffman's death, would have amounted to only $1,119,213 and an immediate tax on that amount.  The difference in the payment amounts is equal to $1,576,264.  This difference and the related tax consequence of an immediate payment on Mr. Hoffman's death creates a significant financial harm to the plaintiffs.

50.     Mr. Hoffman's pension from Textron and Social Security payments end upon his death.  Based on the assumption, given their ages, that Mr. Hoffman would pre-decease Mrs. Hoffman, the fixed schedule of 32 annual installment payments was designed by and requested by Mr. Hoffman so as to increase payments over time to account for the loss to Mrs. Hoffman of the value of Mr. Hoffman's Textron pension and Social Security payments upon his death.  A lump sum payment upon his death would defeat this purpose of Mr. Hoffman's financial planning and violate the terms of a contractual agreement.

51.     In addition, a lump sum payment upon Mr. Hoffman's death would be taxed at the highest tax bracket, as opposed to lower tax rates that Mrs. Hoffman would face while receiving the remaining years of installment payments, if Mr. Hoffman dies prior to the final installment payment.

52.     Mr. Hoffman's financial plan, which was premised upon 32 years of installment payments without an intervening lump sum payment, was designed in 1999 when Mr. Hoffman was 65 years old.  The 32 year stream of payments was a fundamental part of the financial plan, and precluded the need for and the unnecessary cost of additional life insurance in 1999.  At the time that Mr. Fontaine informed Mr. Hoffman of the requirement for a lump sum to be made to his beneficiary upon his death, Mr. Hoffman was 81 years old and there was no possibility of purchasing additional insurance, in light of his age and health.

53.     If Textron believes that it had the authority to amend the Plan, and alter the distribution of Mr. Hoffman's benefits in the asserted manner, then Textron made material and definite misrepresentations in 1999 and every year thereafter through to 2015 when, by both its action and statements, it continuously represented to Mr. Hoffman that his benefit would solely be paid out by means of 32 annual installment payments to Mr. Hoffman and his beneficiary, without any payment at anytime by means of a lump sum payment.  Textron has always known that Mr. Hoffman was relying on that representation.  Mr. Hoffman has, in fact, relied upon that representation, including in his financial and retirement planning, as well as in making decisions as to whether to purchase further insurance as part of that planning.

## Count I
### (Claim for Denial of Benefits, to Enforce Rights and Clarify Rights Under ERISA §502(a)(1)(B))

54.     Plaintiffs incorporate and re-allege the foregoing paragraphs by reference as though fully set forth herein.

55.     Plaintiffs bring this Count I pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(2), which allows a participant or beneficiary to bring claims to recover benefits due

under a plan, to enforce his or her rights under the terms of the plan, or to "clarify his [or her] rights to future benefits under the terms of the plan."

56.     Plaintiffs are entitled to an order overturning Textron's decision to revise Mr. Hoffman's distribution plan previously approved and adopted by Textron, and requiring Textron to instead continue with the 32 year plan of installment payments previously approved by Textron, under which the installment payments are to continue after Mr. Hoffman's death and to be made to his beneficiary, Mrs. Hoffman.

57.     Textron is required to pay all of Mr. Hoffman's benefits by means of 32 installment payments, either to Mr. Hoffman or to his beneficiary.  The plaintiffs are entitled to an order requiring Textron to abide by these terms.

## Count II
## (Claim for Equitable Relief pursuant to 29 U.S.C. § 502(a)(3))

58.     Plaintiffs incorporate and re-allege the foregoing paragraphs by reference as though fully set forth herein.

59.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that "A civil action may be brought . . . by a . . . participant [or] beneficiary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

60.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Textron is estopped from changing Mr. Hoffman's distribution, and is instead required to continue with the 32 year plan of installment payments previously approved by Textron, under which the installment payments are to continue after Mr. Hoffman's death and to be made to his beneficiary, Mrs. Hoffman.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Paul Hoffman and Lynn Hoffman, respectfully request the following relief:

a)    Declare that Textron cannot impose a lump sum payment requirement upon Mr. Hoffman's death on his benefits under the Plan;

b)    Order that Textron continue to abide by the 32 year plan of installment payments previously approved by Textron, under which the installment payments are to continue after Mr. Hoffman's death and to be made to his beneficiary, Mrs. Hoffman;

c)    Award attorney's fees, costs and expenses of this litigation, under ERISA; and

d)    Award all such other relief as this Court deems appropriate.

The plaintiffs,
**Paul Hoffman and Lynn Hoffman**
By their Attorneys,

/s/ Stephen D. Rosenberg

Date: September 26, 2017

_____

Bruce J. McNeil, Esq.
Stephen D. Rosenberg, Esq. [BBO# 558415]
**The Wagner Law Group**
99 Summer Street, 13th Floor
Boston, MA  02110
Tel: (617) 357-5200
Fax: (617) 357-5250
Email: bmcneil@wagnerlawgroup.com
Email: srosenberg@wagnerlawgroup.com

## Certificate of Service

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 26th day of September, 2017.

  /s/ Stephen D. Rosenberg
Stephen D. Rosenberg