# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL HOFFMAN and LYNN HOFFMAN, | |
| Plaintiffs, | Civil Action No. 17-11849-FDS |
| v. | |
| TEXTRON, INC., | |
| Defendant. | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

SAYLOR, J.

    This is a dispute concerning the distribution of payments from a deferred compensation plan. Plaintiff Paul Hoffman was an executive for defendant Textron, Inc., who retired in 1996 after 34 years with the company and a predecessor. He was the payee of a deferred compensation plan, of which his wife Lynn was the primary beneficiary. Because Lynn was approximately 14 years younger than Paul, he opted for the plan's benefits to be paid out in 32 annual installments between 2000 and 2031 to provide for her after his death. However, in 2015, he learned that Textron had amended the plan so that upon his death the remaining benefits would instead be paid out in a lump sum to Lynn.

    The Hoffmans have brought suit under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") to reinstate the annual payments. Textron has moved to dismiss the complaint as unripe and for failure to state a claim. For the following reasons, the motion will be denied.

I.  **Background**

   A.  **Factual Background**

The facts are set forth as described in the complaint and certain documents provided by defendant, to the extent they were "sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).[1]  The Court will not consider documents not discussed in the complaint, such as the plan's terms in effect as of October 5, 2015.  (*See, e.g.*, Def. Ex. C).

Paul Hoffman worked for Textron and a predecessor, AVCO, for 34 years before retiring in May 1996.  (Compl. ¶ 12).  On the day the complaint was filed, Paul was 83 years old, and his wife, Lynn, was 68.  (*Id.* ¶ 13).

Paul is a participant in Textron's "Deferred Income Plan for Textron Key Executives," a benefit plan for company executives.  (*Id.* ¶ 1).  In 1999, he worked with Gary Piscione, Textron's then-Director of Executive Benefits, to determine a payment schedule for the plan benefits.  (*Id.* ¶ 14).  When Paul retired, he did so in accordance with the terms of the plan in effect as of 1995 (the "1995 Plan").  The 1995 Plan was a "top-hat" plan, which is an unfunded plan "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  (*Id.* ¶ 15); *Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 242 (1st Cir. 2002) (quoting 29 U.S.C. § 1101(a)(1)).

Section 5.01 of the 1995 Plan provided that Textron's Benefits Committee could "choose in its sole discretion the methods in Section 5.02 by which benefits payable . . . shall be distributed."  (Def. Ex. A § 5.01).  Section 5.02 provided that benefits would be payable (1) in a

---

[1] On a motion to dismiss, a court may properly take into account certain types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d at 3.

2

single sum; (2) in annual installments over a period "not exceeding the life expectancy of the payee or his primary beneficiary; or (3) through a combination of those two methods. (*Id.* § 5.02). Because Lynn was approximately 14 years younger, Paul opted for annual payments over the course of 32 years. (Compl. ¶ 17). The payments were to begin in 2000 and end in 2031 to correspond to Lynn's life expectancy. (*Id.* ¶¶ 14, 18).[2] Textron approved the request. Through January 2017, all payments were timely made in accordance with the plan. (*Id.* ¶ 14). The annual payments were guaranteed to increase by a minimum of 11 percent per year. (Def. Ex. A § 3.04(a)).

The 1995 Plan did not state that upon the plan participant's death, his beneficiary would receive the remaining benefits in a lump sum. (Compl. ¶ 18). Nor did the 1995 Plan explicitly state whether Textron could change the annual installment payment schedule. (*Id.* ¶ 20). However, Section 9.03 did permit Textron to amend the plan document. (*Id.* ¶ 21; Def. Ex. A § 9.03) ("The Board or its designee shall have the right to amend, modify, suspend or terminate this Plan at any time by written ratification of such action [subject to certain limitations]."). And, Section 6.01 provided that upon the payee's death, the plan's benefits would be payable to the beneficiary. (Def. Ex. A § 6.01).

The 1995 Plan was subsequently amended, effective January 1, 2008, to provide that "any payment to a beneficiary shall be made in a lump sum." (Compl. ¶ 22). Specifically, Section 6.04 of the plan was amended to read: "If a Participant dies before his Account has been fully distributed, any amount remaining . . . shall be paid to his Beneficiary in a lump sum . . . ." (Def. Ex. B ¶ 10). Paul was unaware of that amendment for several years, until he received a letter from Textron employee named Stephen Fontaine dated July 17, 2015. (Compl. ¶¶ 23-25).

---

[2] Payments did not begin until 2000 because, under Section 5.03 of the 1995 Plan, they could not begin until Paul reached age 65. (Compl. ¶ 19).

3

The letter included the statement that "if [Paul] were to pass away, any remaining [amounts owed under the plan would] be paid to [Lynn] in a lump sum approximately 90 days after [his] death." (*Id.* ¶ 26). Soon afterward, Paul wrote to Textron requesting a reversal of the decision to make a lump-sum distribution instead of the annual payments. (*Id.* ¶ 27). However, that request, and his subsequent appeal, were denied. (*Id.* ¶¶ 28-29).

### B. Procedural Background

The Hoffmans brought this suit on September 26, 2017. The complaint asserts two claims against Textron: Count 1 is a claim to clarify the Hoffmans' right to the plan benefits under ERISA § 502(a)(1)(B), and Count 2 seeks equitable relief under ERISA § 502(a)(3) in the form of an order directing Textron to reinstate the annual installment-payment schedule. Textron has moved to dismiss the complaint, alleging that the claims are unripe and that the complaint fails to state a claim upon which relief can be granted.

## II. Legal Standard

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (*citing Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the

complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting C*entro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III. Analysis

#### A. Ripeness

Defendant first contends that plaintiffs' claims are not ripe and therefore not justiciable. Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art III, § 2. The ripeness doctrine is intended to "prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). To be ripe, a complaint must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of the judicial relief sought." *Reddy*, 845 F.3d at 500 (quotation marks and citations omitted).

Here, the parties do not dispute that if Paul dies after 2031, the entire balance due under the deferred-compensation plan will have been paid and no lump sum payment will occur. Defendant argues that plaintiffs' claims are therefore not ripe unless Paul dies before 2031. Although superficially attractive, that argument must be rejected.[3]

Ripeness analysis has two prongs: fitness and hardship. *See Texas v. United States*, 523

---

[3] In their opposition, plaintiffs focused on standing rather than ripeness. Various cases cited by defendant, such as *Ross v. AXA Equitable Life Ins. Co.*, 680 Fed. Appx. 41 (2d Cir. 2017), similarly focus on standing. As the First Circuit has explained, standing and ripeness are "interrelated," but ultimately distinct, justiciability doctrines. *Reddy*, 845 F.3d at 499. To establish standing, a plaintiff must show (1) an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

5

U.S. 296, 301 (1998). "The fitness prong 'has both jurisdictional and prudential components.'" *Reddy*, 845 F.3d at 501 (quoting *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013)). "The jurisdictional component . . . concerns 'whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts.'" *Id.* "The prudential component . . . concerns whether 'whether resolution of the dispute should be postponed in the name of 'judicial restraint from unnecessary decision of constitutional issues.'" *Id.* By contrast, the hardship prong is wholly prudential, and requires that a plaintiff show that he will "suffer [direct and immediate harm] from withholding of a decision." *McInnis-Miesnor v. Maine Med. Ctr.*, 319 F.3d 63, 73 (1st Cir. 2003). A strong showing on one prong may compensate for a weak showing on the other. *Id.*

Here, the complaint has pleaded sufficient facts to establish both the fitness and hardship prongs. In 1999, defendant approved Paul's request that his deferred compensation be paid in annual installments. The Hoffmans relied on that decision in planning for their retirement and any possible tax consequences. Defendant's decision in 2008 to pay out the remaining plan value in a lump sum to Lynn after Paul's death has adverse financial consequences for plaintiffs and has hindered their ability to plan for retirement. For example, because the annual payments increase at a minimum of 11 percent per year, if Paul were to die today, the present value of the annual payments would far exceed the value of the lump sum.[4] There would also be significant tax consequences associated with the lump-sum option, because most of it would presumably be taxed at the highest marginal income-tax rate.

---

[4] Defendant's argument is contingent on Paul living to 97 years old, which is approximately 20 years longer than the average life expectancy for males in the United States (76.1 years). *See Mortality in the United States, 2016*, National Center for Health Statistics, *available at* https://www.cdc.gov/nchs/data/databriefs/db293.pdf. It is highly likely that Paul will pass away before 2031, and that he will predecease Lynn in light of their 14-year age difference.

6

Nor does the complaint suggest that plaintiffs' claims are based on "wholly contingent" harms, as defendant contends. *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 330 (1st Cir. 2016). In *Healey*, the First Circuit found that plaintiffs' declaratory judgment suit was unripe because there was "no particular claim that [was] identified at all." *Id.* at 328. By contrast, plaintiffs in this suit have alleged a concrete wrong—specifically, defendant's 2008 amendment to the 1995 Plan—and a high likelihood of immediate harm. Therefore, the Court concludes that the claims are ripe, and the motion to dismiss for lack of justiciability will be denied.

### B. Failure to State a Claim

#### 1. Review of the Administrative Record

Defendant further contends that the complaint fails to state a claim because the governing documents granted the plan administrator discretion to change the form of payments and because its decision was neither arbitrary nor capricious. In such circumstances, a reviewing court must affirm the administrator's decision if it was reasonable. *See Niebauer v. Crane & Co., Inc.*, 783 F.3d 914, 922-23 (1st Cir. 2015).

As a preliminary matter, the Court must determine what documents it may consider in addressing the motion. In filing its motion to dismiss, defendant attached ten exhibits. However, during the motion hearing, plaintiffs' counsel disputed whether those exhibits constituted the entirety of the administrative record.[5] And the parties did not agree on the version of the plan documents governing this suit; plaintiffs contend that the original plan documents effective January 1, 1994, control, while defendant contends that the plan documents incorporating

---

[5] Plaintiffs' counsel also represented that they did not have copies of various exhibits until defendant provided them in its motion to dismiss.

7

amendments in 2008 and 2015, control.  Because there is a dispute about the administrative record, the Court is limited to the pleadings and inhibited in "evaluat[ing] the reasonableness of [defendant's] administrative determination."  *Tebo v. Sedgwick Claims Mgmt Servs., Inc.*, 848 F. Supp. 2d 39, 49 (D. Mass. 2012).

Adding another wrinkle is the general proposition that ERISA cases are "decided on the administrative record without discovery, and 'some very good reason is needed to overcome the presumption that the record on review is limited to the record before the administrator.'"  *Morales-Alejandro v. Medical Card System, Inc.*, 486 F.3d 693, 698 (1st Cir. 2007) (quoting *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir. 2003)).  However, during the motion hearing, plaintiffs' counsel asserted that there was good cause for discovery, an issue the parties have not had an opportunity to fully brief.

Therefore, because there are significant disputes concerning the scope of the administrative record, the disposition of plaintiffs' claims is better reserved for summary judgment.  *See, e.g.*, *Niebauer*, 783 F.3d at 930 (affirming in part and vacating in part summary judgment); *Leahy v. Raytheon Co.*, 315 F.3d 11, 21 (1st Cir. 2002) (affirming summary judgment); *Terry v. Bayer Corp.*, 145 F.3d 28, 41 (1st Cir. 1998) (same).

### 2.     **Equitable Estoppel**

Finally, defendant offers two separate arguments why Count 2 (equitable estoppel) should be dismissed.  First, defendant notes that the First Circuit has never recognized such a claim under ERISA § 502(a)(3). *See Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 782 (1st Cir. 2014).  However, a majority of other circuits have done so.  *See, e.g.*, *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 578 (3d Cir. 2006); *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444 (5th Cir. 2005); *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85-86 (2d Cir. 2001);

*Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 586 (7th Cir. 2000); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 & n. 13 (6th Cir. 1998) (en banc); *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992); *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir. 1990). In light of the apparent consensus among circuit courts that an equitable estoppel claim under ERISA § 502(a)(3) is viable, the Court will not dismiss the claim on that basis.

Second, defendant contends that the complaint fails to plead the elements of equitable estoppel. "An equitable estoppel claim consists of two elements: (1) the first party must make a definite misrepresentation of fact with reason to believe the second party will rely on it, and (2) the second party must reasonably rely on that representation to its detriment." *Guerra-Delgado*, 774 F.3d at 782 (citations and internal quotation marks omitted). Defendant argues that the complaint does not plead a "definite misrepresentation of fact" because plaintiffs were never explicitly told that "if [Paul] dies before 2031 [ ] his beneficiary would be paid in annual installments until 2031." (Mem. in Supp. at 17). However, the complaint alleges that defendant approved Paul's request that his deferred compensation be paid in 32 annual installments and that he and Lynn relied on that decision in planning for retirement. (Compl. ¶¶ 2, 19). That approval could be construed as a misrepresentation, if defendant subsequently reneged by requiring that Lynn receive a lump-sum payment after Paul's death. Under the circumstances, the Court concludes that the complaint sufficiently pleads the elements of equitable estoppel. Accordingly, the motion to dismiss for failure to state a claim will be denied.

**IV.  Conclusion**

For the foregoing reasons, the motion to dismiss is DENIED.

9

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: July 9, 2018                     United States District Judge